**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| KAPTORIA L. SANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. 1:16-cv-00985 |
| | ) |
| | ) |
| TIKRAS TECHNOLOGY | ) |
| SOLUTIONS CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Memorandum Opinion**

THIS MATTER comes before the Court on Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment and Defendant's Motion for Summary Judgment.

In November 2014, Tikras Technology Solutions Corporation ("Defendant") hired Kaptoria L. Sanders ("Plaintiff"). Defendant is a Native American-owned small business and a member of Arrow Ventures ("Arrow"), a joint venture comprised of three members, including Defendant, SeNet International Corporation ("SeNet") and Dakota Consulting, Inc. ("Dakota"). Arrow had a contract with the United States Department of the Interior's Bureau of Indian Affairs ("BIA"). Arrow's role in the BIA contract was to provide a risk management framework for Department of Interior information systems.

Defendant hired Plaintiff, an African-American woman with more than fifteen years of experience in the industry, for a position as a Senior Security Engineer to work on the BIA contract. In that position, Plaintiff was responsible for representing Defendant as the on-site team liaison to the BIA. The BIA's Chief Information Security Officer, Steve Dean, had recommended Plaintiff for the position with Defendant. Plaintiff worked under Jason Oliver, Defendant's CEO, and Joe Shlikas, Defendant's Chief Strategy Officer.

While Dean worked for the BIA, Plaintiff performed well. Some other members on the BIA Contract did not. Mike Teal, an employee of SeNet, worked in a position junior to Plaintiff. Teal is a Caucasian male. In January 2015, BIA raised some concerns about Teal's performance, which led to Teal being reprimanded and given a final warning. John Sand, an employee of Defendant, worked in a junior position to Plaintiff. Sand is also a Caucasian male. In June 2015, Defendant became aware of some performance issues with Sand. After investigating the issue, Defendant transferred Sand to a contract Defendant had with the National Oceanic and Atmospheric Administration ("NOAA") in July 2015. Defendant subsequently terminated Sand for poor performance on the NOAA Contract.

The BIA's concerns with Plaintiff's performance began in September 2015 when Dean left for another job and the BIA hired

2

Tom Hoyler as the new Chief Information Security Officer. Hoyler and Plaintiff disagreed on several aspects of the BIA contract, including how to best implement the Statement of Work. In October 2015, the BIA's Contracting Officer Representative, Dee Shorter, requested a meeting with Defendant's management and Hoyler to discuss Plaintiff's performance on the BIA contract. On October 16, 2015, Defendant informed Plaintiff and the other members of Arrow, SeNet and Dakota, about the issues raised by the BIA concerning Plaintiff's performance.

In the October 16th meeting with Plaintiff, Defendant offered her a transfer to work on the NOAA Contract. Plaintiff's title would be an IT Security Specialist on the NOAA Contract, and she would receive the same pay and benefits. The worksite for the NOAA Contract was in Silver Spring, Maryland. On October 18th, Plaintiff informed Defendant of her reluctance to accept the transfer. Defendant responded with additional incentives to compensate for the change in Plaintiff's commute. On October 19th, Defendant sent Plaintiff a formal notice of their decision to transfer her to the NOAA Contract.

On October 28th, Plaintiff filed a Charge of Discrimination with the EEOC. Defendant was unaware of this. Plaintiff began working on the NOAA contract on November 9th and she received a positive employment review and a pay raise on December 29th. In January 2016, Defendant granted Plaintiff a special commuting

3

privilege, which allowed her to work off-site on the NOAA contract. On June 13, 2016, Plaintiff submitted her resignation from Defendant; she completed her last day of work for Defendant on June 21, 2016.

On July 29, 2016, Plaintiff filed a Complaint against Defendant in this Court. In her complaint, Plaintiff alleged three counts: (1) discrimination in violation of Title VII; (2) retaliation in violation of Title VII; and (3) discrimination in violation of 42 U.S.C. § 1981. On June 2, 2017, Defendant filed a motion for summary judgment, which Plaintiff responded to on June 16, 2017. That same day Plaintiff also moved to strike Defendant's motion for summary judgment, arguing that Defendant's motion did not comply with Local Rule 56(B).

The Court turns first to Plaintiff's Motion to Strike Defendant's Motion for Summary Judgment. The December 1, 2016 Scheduling Order instructed the parties to file a stipulation of uncontested facts, which is exactly what Defendant did in this case without objection from Plaintiff. Defendant's Stipulation of Uncontested Facts is thus part of the record, and Defendant has complied with Local Rule 56(B) by citing to the record as needed. Furthermore, Plaintiff's Motion to Strike is improper because the Federal Rules of Civil Procedure do not permit a motion to strike against a motion for summary judgment. Thus,

4

Plaintiff's Motion to Strike should be denied, and Defendant's Motion for Summary Judgment is properly before the Court.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

While a plaintiff can prove discrimination through direct evidence, direct evidence is often unavailable. In the absence of direct evidence of discrimination, a plaintiff must rely on the McDonnell Douglas burden-shifting framework. Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996). There are three phases in the McDonnell Douglas framework: (1) the plaintiff must establish a prima facie case; (2) if plaintiff presents a prima facie case, then the Defendant has the burden to show a legitimate, non-discriminatory reason for the adverse employment action; and (3) then the burden shifts to the plaintiff to prove

that the reason given by the Defendant is pretextual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973). Here, Plaintiff cannot establish a prima facie case on any of her claims.

First, Plaintiff has failed to present a prima facie case of Title VII racial discrimination. To present a prima facie case, a plaintiff must prove: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) a similarly situated employees outside the protected class received more favorable treatment. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). A plaintiff's self-serving statements without any corroborating evidence are not sufficient to establish a prima facie case of discrimination. See Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004).

Here, Plaintiff cannot prove that she suffered adverse action because of her race or sex. Plaintiff attempts to compare herself to two Caucasian men, Mike Teal and John Sand, to argue that she was treated worse because she is an African-American woman and that Hoyler did not like working with a woman in a managerial position. This argument is unpersuasive because Teal and Sand are not similarly situated comparator-employees. For a comparison to be meaningful, it must clearly show the similarity in misconduct but dissimilarity in consequences between

6

plaintiff and the comparator-employee. See <u>Bryant v. Bell Atl.</u>
<u>Maryland, Inc.</u>, 288 F.3d 124, 134 (4th Cir. 2002).

Teal is not similarly situated for multiple reasons. First,
Teal is employed by SeNet, not Defendant. An employee of a
different company cannot be a comparator-employee. Second, even
if Defendant employed Teal, the comparison still would not be
meaningful because Teal was a junior level employee who reported
to Plaintiff while she worked on the BIA Contract. Third, the
criticisms against Teal are not similar to the criticisms of
Plaintiff. Thus, Teal is not a meaningful comparator-employee to
Plaintiff.

Likewise, Sand is not similarly situated. While Sand was
employed by Defendant, he was employed at a far more junior
level than Plaintiff. More importantly, Sand was terminated for
his poor performance, indicating that he received harsher
treatment than Plaintiff or his misconduct was not similar. In
either situation, Sand is not a meaningful comparator-employee.
Accordingly, Plaintiff has failed to show that a similarly
situated employee outside the protected class committed similar
misconduct yet received more favorable treatment. Thus,
Defendant is entitled to summary judgment on Plaintiff's Title
VII discrimination claim.

Second, Plaintiff cannot present a prima facie case on her
§ 1981 claim. The elements for a claim of discrimination under

7

42 U.S.C. § 1981 are the same as the elements for a claim of discrimination under Title VII. Gairola v. Com. of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). The plaintiff must prove: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside her protected class.

Here, Plaintiff cannot satisfy her burden to present a prima facie case of discrimination under § 1918 for the same reason she could not present a prima facie case on her Title VII claim. Despite her comparisons to Teal and Sand, Plaintiff cannot prove that she was treated less favorably than a similarly situated employee outside of the protected class. Thus, Defendant is entitled to summary judgment on Plaintiff's § 1981 discrimination claim.

Third, Plaintiff has failed to present a prima facie case that Defendant retaliated against her for engaging in protected activity. To establish a prima facie case of retaliation, the plaintiff must prove that: (1) she engaged in protected activity; (2) she suffered adverse action; and (3) there was a causal link between the two events. E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 405-06 (4th Cir. 2005). The definition of protected activity is opposing discriminatory practices. Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259

(4th Cir. 1998). A complaint, whether formal or informal, must put the employer on notice that the employee is opposing discriminatory conduct. See id.

Here, Plaintiff asserts that she engaged in protected activity on September 14, 2015, when she spoke with Joe Shlikas about Hoyler's treatment of her. Plaintiff writes that she told Shlikas that "she believed Hoyler had a problem with her being a black woman in a managerial position." Plaintiff presented no evidence to support her opinion—at the time or now. In contrast, Defendant argues that Plaintiff did not engage in protected activity until October 28, 2015, when she filed a charge of discrimination with the EEOC, a fact Defendant was unaware of until later. Arguably, neither of these actions placed Defendant on notice that Plaintiff was opposing discriminatory conduct such that Plaintiff's actions constituted protected activity.

But even if Plaintiff did engage in protected activity, Plaintiff still has not satisfied her burden to prove a causal connection between the protected activity and her transfer to the NOAA Contract. If her meeting with Shlikas was protected activity, Plaintiff has presented a temporal connection between the meeting and her transfer, but a temporal connection alone between two events does not prove causation. Shields v. Fed. Exp. Corp., 120 F. App'x 956, 963 (4th Cir. 2005)("Generally speaking, temporal evidence alone cannot establish causation for

a prima facie case of retaliation, unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'")(quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). If filing an EEOC charge was the protected activity, then there is certainly no causation because Plaintiff filed the EEOC charge after her transfer and without Defendant's knowledge.

Finally, even if Plaintiff had presented a prima facie case of retaliation, Defendant has provided a legitimate business reason for its action and Plaintiff has not proven that the reason given is pretextual. Under the McDonnell-Douglas burden shifting framework, Plaintiff must prove that the reason given for the adverse action is pretextual after Defendant provides a non-discriminatory business reason for its action. If Plaintiff cannot meet this burden, then Defendant is entitled to summary judgment as a matter of law.

Here, Defendant's decision to transfer Plaintiff from the BIA Contract to the NOAA Contract was a legitimate, business decision, especially given that Plaintiff agreed to the transfer and retained the same pay and benefits. Provided a company has a legitimate, non-discriminatory reason for firing or demoting an employee, the company's adverse action against the employee does not violate Title VII. See E.E.O.C. v. Clay Printing Co., 955

10

F.2d 936, 946 (4th Cir. 1992). Thus, Plaintiff has failed to prove that her transfer was pretext for discrimination.

Therefore, this Court finds that summary judgment should be GRANTED in favor of the Defendant. An appropriate order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
July 21, 2017

11